# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**FILED**

January 17, 2014
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**In Re: L.W., R.W., and I.H.**

**No. 13-0651** (Taylor County 12-JA-15, 12-JA-16, and 12-JA-17)

## MEMORANDUM DECISION

Petitioner Mother, by counsel Karen Johnson, appeals the Circuit Court of Taylor County's May 24, 2013, order terminating her parental rights to L.W., R.W., and I.H. The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed its response in support of the circuit court's order. The guardian ad litem, Mary Nelson, filed a response on behalf of the children also supporting the circuit court's order and a supplemental appendix. On appeal, Petitioner Mother alleges that the circuit court erred by: (1) finding that she failed to provide reasonable explanations for I.H.'s injuries; (2) finding clear and convincing evidence of abuse and neglect; (3) terminating her parental rights; (4) denying her an improvement period; and (5) denying her visitation.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On August 16, 2013, Petitioner Mother and I.H.'s father took their three-month-old infant, I.H., to the Grafton City Hospital.[1] The same day, Child Protective Services received a referral from Grafton City Hospital because the infant was diagnosed with multiple unexplained injuries. Due to the extent of I.H.'s injuries he was transported to Ruby Memorial Hospital in Morgantown, West Virginia, for further evaluation. It was determined that I.H. had three broken ribs, a medium to large subdural hematoma on his forehead with fluid underneath, bruising above his right eye and his chin, a right leg femur fracture, a circular lesion on the head of his penis, bilateral palm injuries, and blood vessel hemorrhages of the right eye. The DHHR took emergency custody of I.H. and his siblings, R.W. and L.W.

The next day, the DHHR filed an "Imminent Danger Petition After Emergency Taking" based upon the infant's serious, unexplained injuries. The circuit court ratified the immediate

---

[1]I.H.'s father appealed the termination of his parental rights to I.H. in West Virginia Supreme Court of Appeals Case Number 13-0635. Because this matter concerns infant children, we follow our traditional practice in cases involving sensitive facts and use only the parties' initials. *See State v. Edward Charles L.*, 183 W.Va. 641, 645 n.1, 398 S.E.2d 123, 127 n.1 (1990).

1

temporary transfer of custody by order entered on August 17, 2012, and scheduled a preliminary hearing on August 27. At the conclusion of the preliminary hearing, the circuit court concluded that the children should remain in the DHHR's custody.

The circuit court took in-camera testimony from R.W. and L.W.[2] R.W. testified that Petitioner Mother let him watch inappropriate R-rated scary movies such as *Halloween* and *Saw*. R.W. testified that he witnessed I.H.'s father injure I.H.'s leg while he was giving him a bath.[3] R.W. testified that Petitioner Mother hit him on the hand with her opened hand. L.W. also testified that he watched inappropriate movies. L.W. testified that I.H.'s father spanked him on the face and the nose. L.W. further testified that Petitioner Mother spanked him and I.H. in the face and that I.H.'s father spanked R.W. and I.H. in the face, and hit I.H. in the chest.

During the adjudicatory hearing conducted on October 23, 2012, the circuit court heard conflicting testimony from several witnesses. Petitioner Mother testified that she was unaware how I.H. broke his femur until October 1, 2013, when I.H.'s father explained that he may have injured I.H. while he was giving him a bath on August 15, 2013. Dr. John Lubicky, the infant's treating physician, was qualified as an expert in pediatric orthopedics. He testified that the infant suffered from a "bucket fracture" of his right femur. Dr. Lubicky testified that a "bucket fracture" is normally the result of "non-accidental trauma," and is generally caused by twisting the leg, not by applying pressure to it. Dr. Lubicky testified that the femur fracture was "healing quite a bit" and occurred at least seven to ten days before he examined I.H. Dr. Lubicky testified that I.H. also suffered from broken ribs and fractures of the fibula and tibia. Dr. Lubicky testified that these fractures did not recently occur, because the fractures were in different phases of healing.[4]

Petitioner Mother testified that she was unaware of the tibia fractures and offered no explanation. Petitioner Mother testified that I.H. has had problems with his penis since birth due to his circumcision. Beth Kochka, an emergency room nurse at Grafton City Hospital, testified that the injuries to I.H.'s penis included wounds to the shaft and were not typical of a circumcision. Petitioner Mother testified that I.H.'s palm injuries might be the result of a seizure disorder that causes him to clinch his hands. Again, Nurse Kochka testified that the palm injuries had a specific shape and could not be caused by a three-month-old infant. Petitioner Mother testified that I.H. may have broken his ribs during the birthing process. Dr. Lubicky testified that it was unlikely that I.H.'s ribs were broken during birth because they would have healed by the time he examined I.H. Petitioner Mother further testified that the injury to I.H.'s eye might be

---

[2]L.W. was approximately three years old when the petition was filed. R.W. was approximately six years old when the petition was filed.

[3]According to R.W., he was watching cartoons and witnessed I.H. hit his leg on the bathroom sink, which caused I.H.'s leg to bleed, while I.H.'s father was giving I.H. a bath. I.H.'s father asserts that he was giving I.H. a bath in the sink when he became distracted by the other children, who were taking a bath in the same room, when I.H. began to slide deeper into the sink.

[4]Dr. Lubicky also testified that a magnetic resonance image of the infant's brain revealed "some abnormalities."

self-inflicted because he sleeps with his finger in his eye. Finally, Petitioner Mother testified that she believed that I.H.'s father may have accidentally injured I.H.'s leg. The circuit court continued the adjudicatory hearing to allow Petitioner Mother to present testimony from I.H.'s pediatrician to corroborate her testimony regarding I.H.'s potential seizure disorder and injuries to his penis.

On November 13, 2012, the circuit court reconvened for the continued adjudicatory hearing. Counsel for Petitioner Mother did not call I.H.'s pediatrician because "he [was] unable to corroborate [the testimony]." After considering all of the testimony, the circuit court ruled that the children were abused and neglected and that Petitioner Mother was an abusive and neglectful parent. The circuit court found by clear and convincing evidence that I.H. was the victim of multiple instances of child abuse. The circuit court found that Petitioner Mother used physical violence toward I.H. and spanked I.H.'s "face and head." Additionally, the circuit court found Petitioner Mother's testimony "not credible or believable," her explanations for I.H.'s injuries "[were] not consistent with the expert medical testimony," and Petitioner Mother "[has] not accepted any responsibility." Furthermore, the circuit court denied Petitioner Mother's motion for a post-adjudicatory improvement period.

On November 29, 2012, the circuit court held a hearing on Petitioner Mother's motion for a dispositional improvement period and the previously scheduled disposition. The circuit court denied Petitioner Mother's motion and terminated Petitioner Mother's parental rights. The circuit court found that no services could be offered because Petitioner Mother failed to adequately explain I.H.'s injuries and the perpetrator(s) of the abuse have not been identified. It is from this order that Petitioner Mother appeals.

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011).

With this standard in mind, we turn to Petitioner Mother's assignments of error. First, Petitioner Mother argues that the circuit court erred in finding that she did not provide reasonable explanations for I.H.'s injuries. In support of this argument, Petitioner Mother asserts that it is

undisputed that she was at work the entire day leading up to the time that I.H. was taken to the hospital and that she adequately explained I.H.'s injuries.

This Court has previously held, "in the context of abuse and neglect proceedings, the circuit court is the entity charged with weighing the credibility of witnesses and rendering findings of fact." *In re Emily*, 208 W.Va. 325, 339, 540 S.E.2d 542, 556 (2000) (citing Syl. Pt. 1, in part, *In re Travis W.*, 206 W.Va. 478, 525 S.E.2d 669 (1999)). "A reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations." *Michael D.C. v. Wanda L.C.*, 201 W.Va. 381, 388, 497 S.E.2d 531, 538 (1997). As stated above, the circuit court heard conflicting testimony from Petitioner Mother, Dr. Lubicky, and Nurse Kochka regarding I.H.'s injuries. The circuit court also heard testimony that Petitioner Mother allowed the children to watch inappropriate R-rated movies and that she hit the children. The circuit court was in the best position to weigh witness credibility, and we find no error in the circuit court's finding that Petitioner Mother's testimony was "not credible or believable" and failed to provide "reasonable" and "logical" explanations for I.H.'s injuries.

Petitioner Mother's second assignment of error is that the circuit court erred in finding that clear and convincing evidence existed to support the finding that she was an abusive and neglectful parent. We have previously held that

> "W.Va.Code[§] 49–6–2(c) [1980], requires the State Department of Welfare [now the Department of Health and Human Resources], in a child abuse or neglect case, to prove 'conditions existing at the time of the filing of the petition . . . by clear and convincing proof.' The statute, however, does not specify any particular manner or mode of testimony or evidence by which the State Department of Welfare is obligated to meet this burden." Syllabus Point 1, *In Interest of S.C.*, 168 W.Va. 366, 284 S.E.2d 867 (1981).

Syl. Pt. 3, *In re Randy H.*, 220 W.Va. 122, 640 S.E.2d 185 (2006).

We find no error in regard to the circuit court's findings that Petitioner Mother was an abusive and neglectful parent. We disagree with Petitioner Mother's argument that the children's in-camera testimony was unreliable, and that Dr. Lubicky's testimony proved the injuries were suspicious of child abuse.[5] During his in-camera interview, L.W. testified that Petitioner Mother spanked him and I.H. in the face and that I.H.'s father spanked him on the face and nose.

As already stated, the circuit court is charged with "weighing the credibility of witnesses and rendering findings of fact" and this Court "will not second guess such determinations." We decline to grant Petitioner Mother relief in this regard because of the overwhelming evidence supporting the circuit court's findings. This includes the specific evidence that Petitioner Mother physically abused I.H. and L.W. and allowed the children to watch inappropriate R-rated movies. West Virginia Code § 49-1-3(a)(1) defines an abused child as one "whose health or welfare is harmed or threatened by [a] parent, guardian or custodian who knowingly or intentionally

---

[5]Petitioner Mother did not object to the children's in-camera testimony below.

4

inflicts, attempts to inflict or knowingly allows another person to inflict, physical injury or mental or emotional injury, upon the child or another child in the home." Further, because the children meet the definition of an abused child, Petitioner Mother meets the definition of an abusing parent under West Virginia Code § 49-1-3(2). For these reasons, we find no error in the circuit court's decision to adjudicate Petitioner Mother as an abusive and neglectful parent.

Third, Petitioner Mother argues that the circuit court erred in terminating her parental rights. Fourth, Petitioner Mother argues that the circuit court erred in denying her a dispositional improvement period. Because these assignments of error are substantially related, they will be addressed together.

Upon our review, the Court finds no error in the circuit court's termination of Petitioner Mother's parental rights without an improvement period. While Petitioner Mother argues that the evidence was insufficient to support termination without a dispositional improvement period, the record establishes that the circuit court was presented with ample evidence upon which to terminate her parental rights. Specifically, Petitioner Mother argues that the circuit court erred in terminating her parental rights when there was a less restrictive dispositional alternative available and erred in denying her a dispositional improvement period because she vowed to terminate her relationship with I.H.'s father.

To begin, West Virginia Code § 49-6-12(c) gives circuit courts the discretion to grant an improvement period as a disposition when "the [parent] demonstrates, by clear and convincing evidence, that the [parent] is likely to fully participate in the improvement period." We have previously held that

> "in order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense." *West Virginia Dept. of Health and Human Resources v. Doris S.*, 197 W.Va. 489, 498, 475 S.E.2d 865, 874 (1996).

*In re Kaitlyn P.*, 225 W.Va. 123, 126, 690 S.E.2d 131, 134 (2010)

The record is clear that Petitioner Mother failed to admit to the underlying issues of abuse and neglect that gave rise to the petition, failed to terminate her relationship with I.H.'s father and failed to identify the perpetrator(s). Furthermore, Petitioner Mother testified that I.H.'s injuries were not intentional. More importantly, the circuit court found that the DHHR cannot provide services because Petitioner Mother "[denied that] the abuse occurred and "[has not] accepted any responsibility" for I.H.'s injuries, and has failed to identify the perpetrator(s). Additionally, on appeal the guardian ad litem filed a supplemental appendix, which includes copies of I.H.'s father Facebook page that indicates that he is engaged to Petitioner Mother. Because Petitioner Mother failed to admit the truth of the basic allegations of abuse and neglect, the problem was therefore untreatable and the circuit court did not err in proceeding to termination.

Based upon the evidence above, it is clear that Petitioner Mother failed to identify I.H.'s abuser and failed to respond to or follow through with a reasonable family case plan or other rehabilitative efforts designed to reduce or prevent the abuse or neglect of the children. Pursuant to West Virginia Code § 49-6-5(b)(3), this constitutes a situation in which there is no reasonable likelihood that the conditions of abuse or neglect can be substantially corrected in the near future. Furthermore, we have held that "there is no reasonable likelihood that the conditions of abuse can be substantially corrected because the perpetrator of the abuse has not been identified . . . ." Syl. Pt. 3, in part, *In re Jeffrey R.L.*, 190 W.Va. 24, 435 S.E.2d 162 (1993). For these reasons, and because the circuit court found that termination was in the children's best interest, the circuit court was correct to terminate Petitioner Mother's parental rights to the children without a dispositional improvement period as directed by West Virginia Code § 49-6-5(a)(6).

Finally, Petitioner Mother argues that the circuit court erred in denying her visitation during the pendency of the case and post-termination. We find no error in the circuit court's decision to deny Petitioner Mother visitation during the pendency of this case. The record shows that the circuit court was presented with evidence that Petitioner Mother spanked the children and failed to explain I.H.'s injuries. Based upon this evidence, the circuit court concluded that visitation was not appropriate. Pursuant to Rule 15 of the Rules of Procedure for Child Abuse and Neglect Proceedings, determining visitation is within the circuit court's authority. In cases of abuse and neglect, we reiterate that the children's welfare acts as "the polar star by which the discretion of the court will be guided." *In Re: Clifford K.*, 217 W.Va. 625, 634, 619 S.E.2d 138, 147 (2005) (quoting Syl. Pt. 2, *State ex rel. Lipscomb v. Joplin*, 131 W.Va. 302, 47 S.E.2d 221 (1948)). Because the evidence supports the circuit court's finding that visitation was not appropriate, we find no abuse of discretion.

Likewise, we find no abuse of discretion in the circuit court's decision to deny Petitioner Mother post-termination visitation. Petitioner Mother asserts that she has a strong bond with the children and that it is in the children's best interest to have post-termination visitation. The Court has held as follows:

> "'When parental rights are terminated due to neglect or abuse, the circuit court may nevertheless in appropriate cases consider whether continued visitation or other contact with the abusing parent is in the best interest of the child. Among other things, the circuit court should consider whether a close emotional bond has been established between parent and child and the child's wishes, if he or she is of appropriate maturity to make such request. The evidence must indicate that such visitation or continued contact would not be detrimental to the child's well being and would be in the child's best interest.' Syllabus Point 5, *In re Christina L.*, 194 W.Va. 446, 460 S.E.2d 692 (1995)." Syl. Pt. 8, *In re Katie S.*, 198 W.Va. 79, 479 S.E.2d 589 (1996).

Syl. Pt. 8, *In re: Charity H.*, 215 W.Va. 208, 599 S.E.2d 631 (2004).

Our review of the record supports the circuit court's decision denying Petitioner Mother post-termination visitation with her children. The record clearly shows that Petitioner Mother has

denied that any abuse occurred and is engaged to I.H.'s father. For these reasons the Court finds no error in the circuit court's decision denying Petitioner Mother post-termination visitation.

This Court reminds the circuit court of its duty to establish permanency for the children. Rule 39(b) of the Rules of Procedure for Child Abuse and Neglect Proceedings requires:

> At least once every three months until permanent placement is achieved as defined in Rule 6, the court shall conduct a permanent placement review conference, requiring the multidisciplinary treatment team to attend and report as to progress and development in the case, for the purpose of reviewing the progress in the permanent placement of the child.

Further, this Court reminds the circuit court of its duty pursuant to Rule 43 of the Rules of Procedure for Child Abuse and Neglect Proceedings to find permanent placement for the children within twelve months of the date of the disposition order. As this Court has stated,

> The [twelve]-month period provided in Rule 43 of the West Virginia Rules of Procedures for Child Abuse and Neglect Proceedings for permanent placement of an abused and neglected child following the final dispositional order must be strictly followed except in the most extraordinary circumstances which are fully substantiated in the record.

Syl. Pt. 6, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). Moreover, this Court has stated that:

> In determining the appropriate permanent out-of-home placement of a child under *W.Va.Code* § 49-6-5(a)(6) [1996], the circuit court shall give priority to securing a suitable adoptive home for the child and shall consider other placement alternatives, including permanent foster care, only where the court finds that adoption would not provide custody, care, commitment, nurturing and discipline consistent with the child's best interests or where a suitable adoptive home can not be found.

Syl. Pt. 3, *State v. Michael M.,* 202 W.Va. 350, 504 S.E.2d 177 (1998). Finally, "[t]he guardian ad litem's role in abuse and neglect proceedings does not actually cease until such time as the child is placed in a permanent home." Syl. Pt. 5, *James M. v. Maynard,* 185 W.Va. 648, 408 S.E.2d 400 (1991).

For the foregoing reasons, we find no error in the decision of the circuit court and the May 24, 2013, order is hereby affirmed.

Affirmed.

**ISSUED**: January 17, 2014

**CONCURRED IN BY**:

Chief Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Allen H. Loughry II